UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

MATTHEW MELTON,

Defendant.

23-cr-456 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

The Court is tasked with determining how much Melton owes the victims he defrauded. While the parties agree that Melton owes at least $1,784,094, there is a significant amount in dispute—mainly surrounding two transactions involving bitcoin. For the following reasons, the correct amount of restitution is $2,948,299.37.

## BACKGROUND

On August 31, 2023, a grand jury returned an indictment charging Melton with securities and wire fraud for duping victims into investing with him, and then misappropriating those solicited funds. Dkt. 1; *see* Dkt. 25 ¶¶ 6–19. Pursuant to a plea agreement, Melton, on April 29, 2026, pled guilty to the count of securities fraud. Dkt. 30; *see* Dkt. 31. That same day, Melton, his counsel, and the Government signed a consent order contemplating that Melton would make restitution to the victims "in the total amount of $1,784,094.00." Dkt. 34-1 at 1, 4. The Court signed that order shortly thereafter. *Id.* at 4.

Three months later, the Government informed the Court that the signed consent order likely did not reflect the full extent of the victims' losses. Dkt. 29. Specifically, the Government explained that it had learned of an additional, previously unknown victim entitled to restitution, and that several of the already identified victims had lost more than previously contemplated. *Id.* Based on this representation, the Court, at sentencing on July 29, 2026, allowed the parties to investigate the proper amount of restitution owed and deferred making a final determination as to the victims' losses consistent with 18 U.S.C. § 3664(d)(5). Dkt. 32 at 31–33. Neither party objected. *Id.*

On October 15, 2026, the Government submitted a letter clarifying the amount of restitution it believes is required. Dkt. 34. While the Government no longer mentions the purported unknown victim, it maintains that the consent order failed to accurately account for two of the victims' losses. *Id.* at 3. On that basis, the Government claims that the Court should order Melton to make $2,943,182.40 in restitution ($1,159,088.40 more than the consent order envisioned). *Id.* These calculations are based on three premises: (1) victim G.R.'s investment of 10 bitcoin with Melton

entitles G.R. to the return of 10 bitcoin or the cash equivalent, calculated based on the cryptocurrency's value at the time of sentencing; (2) victim K.A.'s investment of 10 bitcoin entitles K.A. to a similar award of restitution; and (3) victim K.A.'s $76,596 investment ($20,000 in cash, $56,596[1] via a bank transfer) was not previously reported by the Government. *Id.* at 2–3; Dkt. 34-4 at 2. On October 27, 2026, Melton filed a letter opposing the Government's application.[2]

## LEGAL STANDARDS

Under the Mandatory Victims Restitution Act ("MVRA"), a court "shall order . . . that the defendant make restitution to the victim[s]" of offenses "against property . . ., including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). In calculating the amount due, "a district court lacks discretion . . . to award restitution for anything less than the full amount of the victim's losses." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013) (quoting *United States v. Walker*, 353 F.3d 130, 131 (2d Cir. 2003)); *accord* 18 U.S.C. § 3664(f)(1)(A). The Government bears the burden of proving what the "full amount" of restitution is, with any dispute to "be resolved by the court by the preponderance of the evidence." *United States v. Fishman*, 157 F.4th 143, 166 (2d Cir. 2025) (quoting 18 U.S.C. § 3664(e)). That said, "the calculation of these losses need not be mathematically precise." *United States v. Rainford*, 110 F.4th 455, 490 (2d Cir. 2024) (cleaned up) (quoting *United States v. Rivernider*, 828 F.3d 91, 115 (2d Cir. 2016)). It can be "a 'reasonable estimate' of the loss 'based on the evidence'" before the court. *Id.* (quoting *United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007)).

## DISCUSSION

As recounted above, the Government claims that Melton owes his victims $2,943,182.40, over $1 million more than is reflected in the consent order of restitution. Dkt. 34 at 4. Melton challenges the Government's application on four grounds: He claims that (1) the Government is time barred from seeking additional restitution, (2) some of the purported losses are insufficiently supported, (3) the victims should not be reimbursed for the interim increase in bitcoin's valuation; and (4) the Government breached its plea agreement by advocating for a restitution amount greater than the

[1] Based on the records provided, the Court finds that the bank transfer was for $56,596 rather than $56,600.
[2] The Court granted Melton's request for an extension of time to respond even though this would bring the final determination outside the period directed by 18 U.S.C. § 3664(d)(5). The parties agreed that the extension would not foreclose the Government's application on timeliness grounds. Dkt. 36; *see also Dolan v. United States*, 560 U.S. 605, 608 (2010) ("We hold that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount."); *United States v. Avenatti*, 81 F.4th 171, 205 (2d Cir. 2023) ("[D]elay of more than 90 days in awarding restitution, if error at all, is not one affecting a defendant's substantial rights and, thus, is properly deemed harmless to the defendant unless he can show actual prejudice from the omission." (cleaned up)). This was done so that the parties would have a full and fair opportunity to brief the issue. *See United States v. Castillo*, 93 F. App'x 273, 276 (2d Cir. 2004) ("The Due Process Clause requires the district court to . . . afford the defendant some opportunity to rebut the Government's allegations." (cleaned up)).

amount accounted for in the consent order. Each of these arguments is taken in turn; none is persuasive.

## I. The Government's application is not time barred.

Melton first argues that the Government "is time barred from seeking an amendment to the" consent order, pursuant to 18 U.S.C. § 3664(d)(5). Dkt. 37 at 2. That provision reads:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim *subsequently* discovers further losses, *the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order.* Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

*Id.* (emphasis added). Looking at the second sentence, Melton presses that the Government cannot put forth any of these new losses now, given that the Government's letter was filed over 60 days *after* the Court entered the consent order. *Compare* Dkt. 34-1 (entering consent order on April 29, 2026), *with* Dkt. 29 (Government first notifying the Court about newly discovered losses on July, 29, 2026). The Government disputes this, stating that because the Court has yet to issue a final order of restitution as part of a sentencing judgment, the 60-day clock had not even begun, much less ended. Dkt. 39 at 1–2. In other words, the Government pegs the 60-day statutory clock to the Court's judgment announcing the final order of restitution, whereas Melton ties it to the signing of the parties' consent order. In the end, the Government has the better of the argument.

Much of the confusion here likely stems from the fact that under 18 U.S.C. § 3663(a)(3), a court may order restitution "to the extent agreed to by the parties in a plea agreement." Indeed, the consent order references that statute explicitly. *See* Dkt. 34-1 at 1 ("Melton . . . shall pay restitution . . . pursuant to 18 U.S.C. §[] 3663(a)(3)."). In this case, however, Melton owes "[m]andatory restitution" under 18 U.S.C. § 3663A, a statute not referenced in the consent order. *See United States v. Frederick*, 2006 WL 2527827, at *1 n.2 (E.D.N.Y. Aug. 14, 2006) (explaining the difference between the Victim and Witness Protection Act of 1982, codified at 18 U.S.C. § 3663, and the MVRA, codified at 18 U.S.C. § 3663A). This is because the offense he pled guilty to—securities fraud—falls under the MVRA's provisions. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii) ("This section shall apply in all sentencing proceedings for . . . plea agreements relating to charges for . . . an offense against property . . . including any offense committed by fraud or deceit."); *United States v. Dupes*, 513 F.3d 338, 345 (2d Cir. 2008) ("The MVRA makes full restitution mandatory for certain crimes, including securities fraud . . . ."). Indeed, Melton's opposition refers only to the MVRA, *see* Dkt. 37 (referring to only the MVRA), which is in line with the fact that he agreed to make restitution pursuant to that statute in his plea agreement, *see* Dkt. 39-1 at 2 ("The defendant further agrees to make restitution, pursuant to . . . [Section] 3663A . . . ."). The consent order—

which again mentions only restitution under Section 3663—therefore does not bar the Government's arguments under the MVRA. And this makes sense because courts are under an obligation to ensure that restitution is for the full amount of a victim's losses, the Government's agreement to a lesser amount notwithstanding. *See Desnoyers*, 708 F.3d at 389.

Moreover, even ignoring that the consent order only dealt with restitution owed under Section 3663, rather than Section 3663A, the statute contemplates that the pertinent order of restitution will be entered as part of the sentence imposed by the court. *See* 18 U.S.C. § 3664(b)(5) (using the sentencing date as the reference point for a court to make a "final determination of the victim's losses"); *see also Ellingburg v. United States*, 607 U.S. 163, 166 (2026) ("Restitution is imposed during 'sentencing' for the offense."). Indeed, Section 3664(a) requires a court, "[f]or orders of restitution," to "order the probation officer" to include information in "its presentence report." Here, the presentence report was not filed until July 20, 2026, months after the consent order was entered. Dkt. 25. Section 3664(o), moreover, notes that "[a] *sentence* that imposes an order of restitution is a final judgment." (Emphasis added.) Finally, Section 3663A states that "the court shall order . . . the defendant make restitution to the victim of the offense" "when sentencing a defendant." 18 U.S.C. § 3663A(a)(1); *see also id.* § 3663(a)(1)(A) (similar). Thus, because the Court had yet to sentence Melton when the consent order was entered, the 60-day clock for victims to apprise the Court could not have started to run.[3]

## II. K.A.'s $20,000 cash investment should be accounted for in the restitution order.

Melton, in a footnote, challenges the support for the $20,000 cash investment K.A. claims to have made. Dkt. 37 at 4 n.2. But K.A. submitted a declaration that they "provided Melton with $20,000 in cash," and the Government introduced an email from Melton that comports with this assertion. Dkt. 34-3 ¶ 4; Dkt 34-3 at 3–4. Therefore, there is sufficient evidentiary support as to this amount. *See United States v. Rahmankulov*, 2025 WL 326495, at *6 (S.D.N.Y. Jan. 28, 2025) ("[C]ourts have repeatedly found that the Government satisfies its burden of proof as to restitution where a witness provides specific statements under penalty of perjury."). And given that Melton would take investor's funds and use them for personal living expenses, Dkt. 25 ¶ 14, it's readily plausible that there would be no "transfer record" of the cash K.A. gave to Melton. Dkt. 37 at 4 n.2. After all, Melton could have simply taken the cash and hidden it away without any bank involvement. Further, in his opposition letter, Melton doesn't affirmatively dispute that he received $20,000 in cash from K.A. or offer a competing declaration to that effect. Dkt. 37 at 4 n.2 (arguing only that there is a lack of evidence going the other way). Thus, based on the evidence presented, it is more likely than not that K.A. gave Melton $20,000 in cash. *See United States v. Torres*, 2026 WL 2884431, at *2 (S.D.N.Y. Sept. 24, 2026) ("The sworn declaration, even absent receipts, bank statements, or tax returns, is sufficient to show the amount of loss."). This amount should therefore be included in the restitution award. *See Fishman*, 157 F.4th at 166.

[3] Melton does not contend that victims are required to directly "petition" the Court for relief under the statute, as opposed to the Government petitioning the Court on their behalf.

### III. Melton owes the victims the value of the bitcoin as calculated on the date of sentencing.

Melton next argues that the bitcoin transfers should be treated as cash—that is, restitution shouldn't be keyed to bitcoin's valuation at the time of sentencing. Dkt. 37 at 2–3. This is wrong.

Before turning to the merits, it's helpful to understand Melton's scheme. Around 2018, Melton began soliciting investments from people by telling them that he had developed a "trading algorithm" that consistently beat the market. Dkt. 25 ¶¶ 6–7. Limited to "close friends," Melton told investors that he would pool their money and trade in index futures using his "algorithm," which would generate returns of 12% per month (with 10% going to investors). *Id.* ¶ 7. This was, of course, a lie. In reality, Melton paid out new investments to old investors in a ponzi-like fashion and pocketed the spare cash to fund his lifestyle. *Id.* ¶ 14. While Melton did invest some portion of the funds (the exact amount is disputed), he did not use the supposed algorithm, and the trades were largely unprofitable. *Id.* As part of Melton's drumming up of funds, K.A. and G.R. each gave him around ten bitcoin to invest, and shortly thereafter, Melton liquidated the assets. Dkt. 34-3 ¶¶ 3, 6; Dkt. 34-5 ¶ 3; Dkt. 34 at 5 n.5. Between then and sentencing, bitcoin's value exploded (by the court's calculation, increasing by over 500%). So the (literal) million-dollar question is whether the amount Melton owes K.A. and G.R. should be keyed to bitcoin's value at the time of their "investment" or to its much higher value eight years later.

Melton puts forward two reasons why it should be the former: (1) the two victims understood that Melton was going to liquidate the assets, and (2) there is no guarantee that the two "would have held onto this bitcoin for all seven years that have lapsed since their initial investment." Dkt. 37 at 2–4. As such, he contends that it would be inequitable to not treat the investments as if they were made in cash.

But even excusing the fact that Melton fails to cite *any* caselaw, the statute is clear:

> The order of restitution shall require that [the] defendant (A) return *the property* to the owner of *the property* . . . , or (B) if return of *the property* . . . is impossible, impracticable, or inadequate, pay an amount equal to . . . the greater of (I) the value of *the property* on the date of the damage, loss, or destruction or (II) the value of *the property* on the date of sentencing.

18 U.S.C. § 3663A(b)(1) (emphasis added). The statute looks to the specific "property" lost, not whether the property was meant to be an in-kind payment. *See Robers v. United States*, 572 U.S. 639, 640–41 (2014) ("[T]he statutory phrase 'any part of the property' refers only to the specific property lost . . . .").[4] Plugging the facts of this case into the formula then, Melton must either

[4] In *Robers*, the Supreme Court held that, in the case of a fraudulently obtained loan, the "property" was the money lent, and so the property to be returned was also the money lent, which could not be offset by the value of collateral given to the banks at the time of the transaction (because it wasn't part of the "property"). 572 U.S. at 642. *Robers* did observe that the money returned didn't have to be the "same bills or checks," but only because money is fungible. *Id.* at 643. The same fungibility principle would apply here; even if it were possible to uniquely identify bitcoin, Milton wouldn't have to return the exact bitcoin K.A.

"return the [20 bitcoin]" or pay the greater of "the value of the [20 bitcoin] on the date of the damage, loss, or destruction" or "the value of the [20 bitcoin] on the date of sentencing." *See id.* And because Melton no longer has the 20 bitcoin he was given, he owes the victims the value of 20 bitcoin at the time of sentencing (which all parties agree is the greater amount). 18 U.S.C. § 3663A(b)(1).

Moreover, this is consistent with "the primary and overarching goal" of the MVRA: "to restore [victims] to their original state of well-being." *United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015) (cleaned up). If Melton had never defrauded K.A. and G.R., they would never have opened their crypto wallets to him. It thus doesn't matter that they knew he was going to convert the cryptocurrency into cash *after* they handed it over; they wouldn't have given him their assets in the first place if he hadn't committed the fraud. K.A. and G.R. do not receive a "windfall," as Melton claims they do, Dkt. 37 at 3, by being put back in the position they would've been in, had they never been tricked. *See United States v. Ichioka*, 2024 WL 2822926, at *2 (N.D. Cal. June 4, 2024) ("Any Bitcoin losses will be awarded in an amount equal to what the Bitcoin was worth on the date of sentencing—not in kind. . . . That makes sense, because Ichioka's fraud prevented victims from capitalizing on positive fluctuations in the Bitcoin market."); *United States v. Kim*, 2026 WL 2059080, at *5 (N.D. Cal. July 16, 2026) ("It is not a windfall or grossly disproportionate for the victims to be compensated for the amount of cryptocurrency they had before Kim's fraud, even if the *value* of that cryptocurrency has since greatly increased."); *cf. Robers*, 572 U.S. at 645 (holding that "losses in part incurred through a decline in the value of collateral sold are directly related to an offender's having obtained collateralized property through fraud" given that "[f]luctuations in property values are common").

Nor does the Court find persuasive the argument that K.A. and G.R. might have sold their bitcoin in the intervening years anyway. Dkt. 37 at 3. That's true for all property. *See Kim*, 2026 WL 2059080, at *4 ("It is also of no consequence that it is impossible to know what the victims would have done had they retained their cryptocurrency."). And while restitution is not meant to compensate "hypothetical or speculative" losses, *United States v. Maynard*, 743 F.3d 374, 378 (2d Cir. 2014), what Melton is asking the Court to do is engage in a competing conjecture—that is, assume a course of events and, on that basis, reduce the victims' losses. That too is improper. And even if the Court were to theorize, there's no evidence presented that the two victims would have sold their crypto holdings. Melton claims that the fact they gave him their bitcoin indicates that they would have cashed in the assets eventually. But the only reason they gave him the cryptocurrency was because they expected to receive 10% returns on their investment every month, an amount that would have outpaced even the meteoric rise of bitcoin.

In any event, even if one might think that a valuation based on an inquiry into these facts and circumstances—*e.g.*, what K.A. and G.R. meant to do when they gave Melton their bitcoin, whether or not they would have held onto it during the ensuing years, etc.—would be the better

---

and G.R. gave him. Any old bitcoin would do. One thing, however, is certain. Money and bitcoin are not fungible with respect to each other.

approach, the Court must apply the statute as written. *Raila v. United States,* 355 F.3d 118, 120 (2d Cir. 2004) (noting that statutory construction "begins with the plain text, and, where the statutory language provides a clear answer, it ends there as well" (cleaned up)). Here, the statute is clear. No one disputes that the bitcoin at issue is "property" under § 3663A, nor that it was subject to a "loss." 18 U.S.C. § 3663A(b)(1). No one disputes that the "property" cannot be returned to the owners. *Id.* § 3663A(b)(1)(A). Under these circumstances, the statute dictates that Melton must "pay an amount equal to . . . the greater of" the value of the property on the date of the loss or "the value of the property on the date of sentencing." *Id.* § 3663A(b)(1)(B). No one contests that the latter is the greater of the two values.

So consistent with the statutory text and all the cases to address the issue, proper restitution here should account for the value of the bitcoin at the time of sentencing, or $63,908.17 per bitcoin. *See Bitcoin USD Price (BTC-USD)*, Yahoo! Finance, https://finance.yahoo.com/quote/BTC-USD/history/ [https://perma.cc/XS5W-9DD5] (last visited Nov. 2, 2026). That said, the Court notes that the parties' assertions regarding the number of bitcoin transferred are estimates. The records provided by Coinbase, however, demonstrate the exact amounts conveyed. Dkt. 34-4. Using an estimate is thus inappropriate. Based on those records, the Court finds that K.A. gave Melton 10.2164 bitcoins ($652,911.43) and G.R. gave him 9.8637302 bitcoins ($630,372.95). Accordingly, the order of restitution should reflect those amounts rather than the approximations provided by the Government.[5]

## IV. Melton's breach-of-plea argument is brought purely for purposes of appeal.

Finally, Melton states that the Government has "committed a material breach of" the plea agreement by "advocating for a restitution amount beyond what was stipulated." Dkt. 37 at 4. The Government disputes this, highlighting that the plea agreement's terms regarding restitution bind only the defendant, not the Government. *See* Dkt. 39-1 at 2 ("The defendant further agrees to make restitution . . . in the amount of $1,784,094 . . . ."). And besides, the Government argues, Melton forfeited this argument by failing to raise it at sentencing. Dkt. 39 at 5. But regardless of who is right here, it appears that Melton only advances this argument for purposes of getting around the plea agreement's appeal waiver. Dkt. 37 at 4 (arguing only that "Melton would not be precluded from raising [the restitution] issue on appeal"). The dispute is therefore not before the Court.

Indeed, the Court does not see what relief could be granted, even accepting that there was a material breach of the plea agreement. "When the Government breaches a plea agreement, the defendant is entitled to either withdraw his plea or have his agreement specifically performed." *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004). Melton, however, does not seek to withdraw his plea, and even if the Court were to order the Government to specifically perform under the agreement, that agreement does not bind the Court; the Court is required to order restitution "in the full amount of each victim's losses" without discretion. *United States v. Reifler*, 446

[5] The consent order also included typographical errors regarding two of the victims' losses, such that the sum of the losses does not equal the listed total amount. Dkt. 34-1 at 5. The Court's calculations rely on the PSR, which contains corrected numbers. Dkt. 25 ¶ 27.

F.3d 65, 113 (2d Cir. 2006) (citing 18 U.S.C. § 3664(f)(1)(A)); *see United States v. Israilov*, 2024 WL 3888773, at *11 (S.D.N.Y. Aug. 20, 2024) ("This Court has an independent obligation under the MVRA to calculate a restitution amount that will fully compensate victims for their losses." (cleaned up)); *Desnoyers*, 708 F.3d at 389 (quoting *Walker*, 353 F.3d at 131). So the Court would have come to this result regardless. *Cf. Ichioka*, 2024 WL 2822926, at *1 (reaching similar holding despite government's agreement with defendant that victims should not receive restitution in line with bitcoin's value at the time of sentencing).

## CONCLUSION

For these reasons, the Court finds that an appropriate order of restitution requires Melton to pay **$2,948,299.37**. This number reflects K.A.'s total loss of $684,763.43 and G.R.'s total loss of $619,072.95. The Government should furnish a proposed order reflecting these determinations.

The Clerk of Court is respectfully directed to terminate the motion at ECF 34.

SO ORDERED.

Dated: November 16, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge